UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RODERICK LEWIS,                        :
   Plaintiff,                        :
                             :
   v.                                :     Case No. 3:22-cv-1248 (OAW)
                             :
CHARLES STANGO, et al.,                :
   Defendants.                       :

**ORDER OF DISMISSAL**

Plaintiff Roderick Lewis, an inmate[1] in the custody of the Connecticut Department

of Correction ("DOC"), has filed an amended complaint asserting civil rights claims

(pursuant to 42 U.S.C. §§ 1983, 1985, and 1986), constitutional claims (under the First,

Fourth, Fifth[2], Sixth, Eighth, and Fourteenth Amendments), conspiracy, and state law

claims against the State of Connecticut, the Commissioner of Correction (whom Plaintiff

identifies as a John Doe), and eight individuals: Connecticut State's Attorneys Charles

Stango, Cornelius Kelly, and Margaret Kelley; Connecticut Judges of the (State)

Superior Court Iannotti and Brown; Attorney John Walkley (State Public Defender);

Connecticut Attorney General William Tong; and Connecticut Governor Ned Lamont.

Am. Compl., ECF No. 12.  Plaintiff seeks damages and injunctive relief.  For the

following reasons, the Amended Complaint is **DISMISSED.**

---

[1] The court may "take judicial notice of relevant matters of public record."  *Giraldo v. Kessler*, 694 F.3d
161, 164 (2d Cir. 2012).  Publicly-available information on the Connecticut Department of Correction
website shows that Plaintiff received a fourteen-year sentence on February 18, 2016, for a controlling
offense of home invasion.  Currently, he is housed at Brooklyn Correctional Institution.  *See* Connecticut
State: Department of Correction, "Inmate Information," http://www.ctinmateinfo.state.ct.us/detailsupv.asp?
id_inmt_num=332929 [https://perma.cc/TJZ6-J8QE ] (last visited July 20, 2023).

[2] Presumably, Plaintiff intended to allege that Defendants violated his Fifth Amendment due process
rights. However, the Fifth Amendment Due Process Clause does not apply to state actors, and so this
claim summarily is dismissed. *See Baltas v. Rizvani*, 2022 WL 17251761 at *17 (D. Conn. Nov. 28, 2022).

## I.    Factual Allegations[3]

On December 18, 2013, Plaintiff was arrested and charged with Home Invasion. Am. Compl., ECF No. 12 at ¶ 13.  He asserts that Attorneys Stango and Kelly fraudulently concealed the jurisdiction process throughout the two years prior to his trial. *Id.*  He alleges that they knowingly and intentionally proceeded without jurisdiction and withheld valuable information that they had a duty to disclose.  *Id.* at ¶ 14.  Plaintiff further alleges that Judge Iannotti sentenced him to fourteen years' incarceration and six years' special parole knowing that the court lacked jurisdiction.  *Id.* at ¶ 15.

On December 24, 2019, Plaintiff filed a Section 1983 civil suit against police officers of the West Haven Police Department ("WHPD").[4]  *Id.* at ¶ 16.  He alleges that this suit was settled and that the officers "admitted guilt."  *Id.* at ¶ 17.

On April 13, 2022, Plaintiff filed a "motion to vacate" in state superior court in Milford, Connecticut, asserting that the federal court had ruled that his arrest had been made in retaliation.  *Id.* at ¶ 18.  Nine months later, a hearing was scheduled for Plaintiff's motion to vacate.  *Id.* at ¶ 19.  At the motion hearing, Attorney Kelley served as the prosecutor.  *Id.*  Judge Brown denied the motion.  *Id.*  Plaintiff asserts that both Judge Brown and Attorney Kelley knew that there was a lack of jurisdiction.  *Id.*

On January 27, 2022, Plaintiff filed a motion to correct an illegal sentence that challenged the superior court's jurisdiction to obtain Plaintiff's conviction.  *Id.* at ¶ 20.

---

[3] All factual allegations are drawn from the amended complaint and considered to be true.
[4] *See Lewis v. Doe et al.*, Case No. 3:19-cv-2015 (JCH).

On March 17, 2022, Plaintiff submitted a request for response or opposition from the Milford State's Attorney but received no reply.  *Id.* at ¶ 21.

From April through June 2022, Plaintiff and his family were in constant contact with the Milford Superior Court Clerk's Office.  *Id.* at ¶ 22.  During this time, the court clerks and Defendants denied having received Plaintiff's motion to correct an illegal sentence.  *Id.* at ¶ 23.  After Plaintiff clarified that the motion was sent by United States certified mail, the motion appeared.  *Id.*

In June 2022, Plaintiff was informed by a clerk that he would have a guaranteed hearing date in the second week of July 2022.  *Id.* at ¶ 24.  During the second week of July, he was told that no hearings would be scheduled until the month of September.  *Id.* at ¶ 25.  Plaintiff explained that his motion was one that normally took forty-five days to be heard but was taking several months to be scheduled.  *Id.* at ¶ 26.

The following week, Plaintiff received a letter through DOC interdepartmental mail from Attorney Walkley, who indicated that he was reaching out to Plaintiff upon the presiding judge's request to provide Plaintiff with assistance and "to put [his] motions in order so the Judge can properly consider them."  *Id.* at ¶¶ 27–28; *see also* Ex. C, ECF No. 12-1 at 13.

Plaintiff later reached out to Attorney General Tong by certified mail to explain that the superior court was not scheduling a hearing for his motion that had been pending five months.  ECF No. 12 at ¶ 29; *see also* Ex. E, ECF No. 12-1 at 18.  Plaintiff never received a response.  ECF No. 12 at ¶ 30.

3

Plaintiff maintains that Defendants conspired with the West Haven police officers as retaliation for Plaintiff's lawsuit against the WHPD. *Id.* at ¶¶ 31–32. He claims that the West Haven officers acted on behalf of Defendants in their retaliation against Plaintiff. *Id.* In addition, he claims that Defendants sought to retaliate against Plaintiff for pursuing a writ of habeas corpus to expose violations of the law. *Id.* at ¶ 31.

On November 30, 2022, Plaintiff submitted written argument in support of his motion to correct an illegal sentence. *Id.* at ¶ 33. In December 2022, Plaintiff appeared before Judge Brown at a hearing with Attorney Kelley. *Id.* at ¶ 34. In a written order, Judge Brown dismissed the motion to correct an illegal sentence, citing a lack of jurisdiction. *Id.* at ¶ 35; *see also* Ex. F, ECF No. 12-1 at 20. Plaintiff received this ruling so late that he missed the deadline to appeal. ECF No. 12 at ¶ 36.

Plaintiff then submitted a motion to dismiss and a motion for articulation, each of which was denied. *Id.* at ¶ 37–38.

Plaintiff alleges that Governor Lamont has put unofficial policies in place to permit state prosecutors and state judges to impose illegal sentences by using fraudulent means to obtain convictions. ECF No. 12 at ¶ 47.

Plaintiff seeks damages, and asks the court to order the authorities to provide a hearing for Defendants to prove on the record that Plaintiff consented to jurisdiction in his criminal case.[5]

---

[5] Plaintiff identifies his criminal case as docket number CR13-85458-T.

4

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, sua sponte dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F. 3d 90, 100–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Plaintiff asserts violations of his civil rights under 42 U.S.C. §§ 1983, 1985, and 1986 in connection with his arrest, state prosecution, conviction, and sentence.  His Amended Complaint asserts the following eight counts: false imprisonment (Count One); retaliation (Count Two); procedural due process violation (Count Three); lack of jurisdiction (Count Four); conspiracy (Count Five); fraud (Count Six); malicious

6

prosecution (Count Seven); and deprivation of rights (Count Eight). Plaintiff seeks damages and asks the court to order the authorities to provide a hearing for Defendants to prove on the record that he consented to jurisdiction in his state criminal case.

### A.    Claims Against the State of Connecticut

Plaintiff cannot bring a Section 1983 claim against the State of Connecticut because the state is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983."). Accordingly, any claims against the State of Connecticut are not plausible and must be dismissed.

### B.    Claims Barred by *Heck* Doctrine

Plaintiff claims that he was imprisoned falsely; that his conviction violated procedural due process; that there was no jurisdiction for his prosecution, conviction or sentencing; that there was no probable cause for his prosecution; and that his rights to liberty were "stolen" by "means of fraud and misrepresentation."[6]  Such claims challenge the validity of his criminal conviction and must be dismissed under the doctrine articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994).

"Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of [Section] 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).  Thus, in *Heck*, the Supreme Court of the United

---

[6] The court presumes these allegations are the predicates for Plaintiff's claims of Fourth, Fourteenth, and Eighth Amendment violations.

States held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck,* 512 U.S. at 487.  In *Wilkinson v. Dotson*, the Supreme Court clarified that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."  *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

That is the case here.  If Plaintiff were to prevail on his assertion that the state lacked jurisdiction for his criminal prosecution and conviction or that he was imprisoned falsely, a judgment in his favor necessarily would imply the invalidity of his confinement. Although Plaintiff alleges that the West Haven police officers "admitted guilt" in connection with the settlement for his First Amendment retaliation case, he has not shown that his challenged conviction has been invalidated on direct appeal, by executive order, or by a state tribunal, and he has not shown that it has been called into question by a federal court's issuance of a writ of habeas corpus.  Accordingly, the court dismisses Plaintiff's claims challenging the validity of conviction in Count One (false imprisonment), Count Three (procedural due process violation), Count Four (lack of jurisdiction), Count Five (conspiracy to prosecute without jurisdiction), Count Six

(misrepresentation to arrest without probable cause), Count Seven (malicious

prosecution); and Count Eight (deprivation of rights).   None of these counts states a

cognizable claim.

   **C.    Conspiracy Claims under Sections 1983 1985, 1986**

   To the extent Plaintiff alleges additional conspiracies that are not barred by *Heck*,

the court must dismiss such claims because Plaintiff has not alleged any plausible

conspiracy.

   Section 1985 has three subsections. Subsection (1) relates to conspiracies to

prevent federal officials from performing their duties and has no relevance to Plaintiff's

alleged facts.  Subsections (2) and (3) provide causes of action for conspiracies to

violate a plaintiff's civil rights.  *Mills v. Noonan*, No. 1:16-CV-00984-MAT, 2017 WL

1353479, at *10 (W.D.N.Y. Apr. 13, 2017).  Subsection (2) concerns conspiracies to

deter "any party or witness" from participating in state or federal proceedings or to

obstruct justice with intent to deny equal protection of the law; and subsection (3)

applies to conspiracies to deprive a person or class of persons of the equal protection of

the laws, or the equal privileges and immunities under the laws, that are motivated by a

"racial, or perhaps otherwise class-based invidiously discriminatory animus . . . ." *Griffin*

*v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Dolan v. Connolly*, 794 F.3d 290,

296 (2d Cir. 2015).

   Plaintiff has not alleged a plausible conspiracy under Sections 1985(2) and (3) or

under Section 1983.  To state a viable conspiracy claim under Section 1985, a plaintiff

"must provide some factual basis supporting a meeting of the minds, such that

defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y.2000)).  And for a Section 1983 conspiracy claim, conspiracy allegations can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed . . . ."). Plaintiff alleges no factual basis to support a meeting of the minds or even a plausible inference that Defendants conspired to violate his constitutional rights.

In addition, Plaintiff has not alleged any nonconclusory facts to reflect that Defendants were acting in furtherance of a conspiracy motivated by racial or other unlawful discrimination as required for a conspiracy claim under Section 1985(3).  And as for any claim under section 1986, it necessarily fails because a violation of Section 1986 may proceed only if a plaintiff is able to establish a predicate claim under section 1985. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000).  Because Plaintiff's conclusory allegations cannot support his conspiracy claims under 42 U.S.C. §§ 1983, 1985, and 1986, his federal conspiracy claims alleged in Count Two (retaliation) Count Three (procedural due process violation), Count Five (conspiracy to prosecute without jurisdiction); Count Six (conspiracy to commit fraud, misrepresent

10

probable cause, conceal documents, and mislead plaintiff), and Count Eight (conspiracy to deprive Plaintiff of his rights) must be dismissed as not plausible.

### D.   First Amendment Retaliation

In Count Two, Plaintiff asserts a First Amendment violation based on retaliation. Plaintiff claims that all defendants retaliated against him by obtaining an unlawful conviction against him, destroying documents, and denying his motions because of his litigation history with the West Haven Police Department.

To prevail on a First Amendment retaliation claim, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).  Consequently, the Second Circuit has required that prisoner retaliation claims be supported by specific, detailed factual allegations, and not stated in wholly conclusory terms.  *Dolan*, 794 F.3d at 295.

Because Plaintiff's retaliation claim asserts that he filed a prior federal legal action against the West Haven police officers, he has satisfied the first element. Protected speech or activity includes filing a lawsuit, an administrative complaint, or a

prison grievance. *See id. at* 294 ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (quoting *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996)); *Booth v. Comm'r of Corr.*, No. 19-CV-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity.").

With respect to the second element, "[a]n adverse action is defined as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003)).  Here, Plaintiff has alleged that the state defendants conspired and collaborated to prosecute and convict him, which would surely deter a person of ordinary firmness from exercising their federally-protected rights.  Ergo, the second element also is satisfied.

With respect to the third element, however, Plaintiff's proffer is lacking.  To show a causal connection between Plaintiff's previous federal lawsuit and the adverse action, he would have to state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)) (alteration in original). "Some of the facts often used to determine retaliatory motive include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4)

statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019). Plaintiff has not alleged any facts to support his claim that any Defendants were motivated to take adverse action against Plaintiff either because he sued the West Haven Police Department or because he filed an action for habeas relief. His retaliation claim is wholly conclusory. The court notes, too, that the timing of events does not support his claim. He was convicted in 2013, but did not file suit against the West Haven Police Department until 2019, and he did not file the relevant motions until 2022. His conviction therefore cannot be retaliation for any of the actions alleged because it preceded those actions. And the mere fact that a court did not rule in his favor is insufficient to show the requisite causal connection. Accordingly, Plaintiff's retaliation claim must be dismissed as not plausible.

### E.    Attorney Walkley

Regarding the claims against Attorney Walkley, the court finds that he is not a state actor. An attorney from the public defender's office generally does not act under color of state law while operating within the scope of their role as defense counsel or by virtue of their state law license, *Polk Cty. v. Dodson*, 454 U.S. 312, 319 n.9, 325 (1981), nor by their public sector employment, *id.* at 325 (noting that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."). Thus, Attorney Walkley is considered a private party while serving as Plaintiff's appointed counsel.

Still, the court must consider whether Plaintiff raised Section 1983 claims against Attorney Walkley for conduct that can be considered state action. *See United States v.*

*International Brotherhood of Teamsters,* 941 F.2d 1292, 1295 (2d Cir.1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").  To show that the actions of a private party may be attributable to the state, thereby exposing them to Section 1983 liability, a plaintiff must show that "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."  *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order).  "The fundamental question . . . is whether the private entity's challenged actions are 'fairly attributable' to the state."  *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).  The only factual allegation with respect to Attorney Walkley is that Attorney Walkley sent Plaintiff a letter informing Plaintiff that he had been asked by the presiding judge to assist Plaintiff with his motions.  This raises no inference that Walkley engaged in conduct that could be considered fairly attributable to the state.

A public defender also may be held liable under section 1983 if he or she conspired with state actors. *Tower v. Glover*, 467 U.S. 914, 920 (1984) (holding that a private party acts under color of state law when conspiring with state actors).  As previously discussed, however, Plaintiff's conclusory allegations are insufficient to support his conspiracy claims.  Accordingly, the court must dismiss all Plaintiff's civil rights claims against Attorney Walkley as not plausible.

### F.       Absolute Immunity: Prosecutors[7]

The doctrine of absolute immunity applies "to shield a prosecutor from liability for money damages (but not injunctive relief) in a § 1983 lawsuit, even when the result may be that a wronged plaintiff is left without an immediate remedy." *Anilao v. Spota*, 27 F.4th 855, 863 (2d Cir. 2022).   Absolute immunity protects prosecutors from suit "for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the process.'" *Burns v. Reed*, 500 U.S. 478, 485 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409 at 430–31 (1976)).   The immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir. 1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994)) (alteration in original).   The Second Circuit has held that "absolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial" because "the immunity attaches to his function, not to the manner in which he performed it." *Anilao*, 27 F.4th at 864 (quoting *Dory*, 25 F.3d 81, 83 (2d Cir. 1994)) (alteration in original). However, a  prosecutor who acts without any colorable claim of authority is not entitled to absolute immunity. *Id.*

In considering whether a prosecutor acted without a colorable claim of authority, the court must consider whether any relevant criminal statute "may have authorized

---

[7] Absolute immunity extends to civil lawsuits brought against prosecutors acting in their official capacities under Sections 1983, 1985, and 1986. *Dos Santos, III v. The Syracuse Police Dept.*, 2022 WL 16949542, at *5 (N.D.N.Y. Nov. 15, 2022); *see also Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022).

prosecution for the charged conduct." *Id.* (quoting *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005)).  Prosecutors are entitled to absolute immunity from Section 1983 liability even if "'state law did not empower [them] to bring the charges,' so long as 'they have at least a semblance of jurisdiction' that does not run far afield of their job description." *Id.* (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)) (alteration in original).

Here, the publicly available information on the Connecticut judicial website for case number AAN-CR13-0085458-T shows that Plaintiff was prosecuted, convicted, and sentenced for violation of the Connecticut Criminal Statutes §§ 53a-100aa (for home invasion) and 53-21(a)(1) (for risk of injury to a child).[8]  There is no suggestion that these states statutes did not empower Attorneys Stango, Kelly, and Kelley to act in their prosecutorial function to present the State's case in connection with Plaintiff's prosecution, sentencing, or requests for post-conviction relief.

Accordingly, Attorneys Stango, Kelly, and Kelley are absolutely immune from claims for damages, and Plaintiff's civil rights claims against them must be dismissed.

### G.   Absolute Immunity: Judges Iannotti and Brown[9]

"It is well settled that judges generally have absolute immunity from suits for

---

[8] *See* State of Connecticut Judicial Branch: Criminal/Motor Vehicle Conviction Case Detail, available at https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Disp [https://perma.cc/2ZAK-U4UH] (last visited July 21, 2023).

[9] Absolute immunity for judges also is applicable for Section 1983, Section1985, and Section 1986 claims. *See Emerick v. Connecticut*, 2020 WL 1083627, at *3 (D. Conn. Mar. 6, 2020) (noting absolute immunity for judges applied for civil lawsuits including those brought under section 1983 and 1985 actions).

money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009).  This immunity is "from suit, not just from ultimate assessment of damages."  *Mireles v. Waco,* 502 U.S. 9, 11 (1991).  "The law affords judges absolute immunity from personal liability for acts 'committed within their judicial jurisdiction,' however erroneous the act and regardless of motivation."  *Tapp v. Champagne*, 164 F. App'x 106, 107–08 (2d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

There are two exceptions to judicial immunity: a judge is not immune from liability for actions not taken in the judge's judicial capacity, nor is a judge immune from liability for actions, though judicial in nature, that are taken in the complete absence of all jurisdiction.  *Mireles*, 502 U.S. at 11–12.

Here, Plaintiff's claims against Judges Iannotti and Brown do not satisfy either exception.  Although Plaintiff's allegations against the judges are somewhat vague, Plaintiff clearly takes issue with how they handled his court proceedings before them. Thus, the predicate actions certainly were taken in the judges' official capacity.  And although Plaintiff contends that his conviction and imprisonment were without jurisdiction, the exception does not encompass every jurisdictional challenge (or indeed, every civil rights complaint would contain conclusory assertions of a lack of jurisdiction). Thus, the question is not whether a judge's action was "in excess of his authority," but rather, "whether at the time he took the challenged action he had jurisdiction over the subject matter before him."  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  This means the judge must have acted in *clear* absence of *all* jurisdiction.  *Id.* at 357. Connecticut's legislature has endowed the superior courts with broad authority to hear

all actions.  Conn. Gen. Stat. Ann. § 51-164s ("The Superior Court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute.").  It cannot be disputed that this grant of authority necessarily includes criminal actions and challenges thereto.  Thus, the defendant judges cannot be said to have acted in complete absence of all jurisdiction.  Accordingly, Plaintiff's claims for money damages from the judges must be dismissed.

Generally speaking, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), but Section 1983 specifically bars injunctive relief "against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was unavailable," 42 U.S.C. § 1983. Consequently, the court must determine whether Plaintiff has stated plausible claims for injunctive relief.

The court concludes Plaintiff has not stated plausible claims for injunctive relief. Plaintiff loosely refers to a conspiracy between the defendants and the WHPD, but, as discussed supra, such claims wholly are conclusory.  Moreover, no facts substantiate his assertion that the state superior court lacks jurisdiction over prosecution for violations of state criminal law.  Accordingly, Plaintiff's claims seeking injunctive relief for violation of his civil rights by Judges Iannotti and Brown must be dismissed.

### H.    Governor Lamont,  Attorney General Tong, DOC Commissioner Doe

Plaintiff asserts that Governor Lamont and Attorney General Tong violated his

civil rights under Section 1983.  Specifically, he claims that Governor Lamont has permitted judges and prosecutors to impose illegal sentences by fraudulently obtaining convictions, and that Attorney General Tong never responded to his letter.

As previously discussed, Plaintiff has not stated any plausible claim of conspiracy between Defendants.  Moreover, Plaintiff's claims that Attorney General Tong and Governor Lamont should be liable for failure to correct the alleged violations (regarding his prosecution, sentencing, or post-trial motions) are not plausible.  In order to state his Section 1983 claim, Plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the defendant official[s] . . . ."  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).  No facts suggest that Attorney General Tong or Governor Lamont had any involvement with the judicial process for Plaintiff's criminal proceedings, and no facts support Plaintiff's conclusory allegation that these defendants have instituted a policy of encouraging unlawful convictions.

Moreover, it is not plausible that either Governor Lamont or Attorney General Tong participated in his criminal prosecution because criminal prosecutions in Connecticut neither are the responsibility of the Governor nor of the Attorney General.  *See Harasz v. Katz*, 239 F. Supp. 3d 461, 475 (D. Conn. 2017) (noting that, under state statutory scheme, responsibility for initiating criminal proceedings rests with Office of the State's Attorney).  And even if Attorney General Tong or Governor Lamont had any direct supervisory involvement in Plaintiff's criminal proceedings, they would be entitled to absolute immunity.  *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536–37 (2d Cir. 1993) (concluding that a supervisory official is entitled to

19

same immunity defenses as a prosecutor defendant).

Finally, the fact that Plaintiff's letter to Attorney General Tong went unanswered is insufficient to establish that the attorney general had any direct involvement in the failure to schedule Plaintiff's motion for a hearing.  *See Braxton v. Bruen*, No. 917CV1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) ("[R]eceipt by a supervisory official of a letter from an inmate, without more, has been insufficient to establish the official's personal involvement in a § 1983 constitutional claim."); *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("Thus, as a matter of law, a defendant's mere 'receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement.'") (quoting *Burns v. Fischer*, 2014 WL 1413387, at *5 (W.D.N.Y. Feb. 3, 2014)) (alteration in original).

Accordingly, Plaintiff's claims for damages under Section 1983 against Attorney General Tong and Governor Lamont must be dismissed as not plausible.   And, as Plaintiff has not alleged any facts about DOC Commissioner Doe, the Section 1983 claim is dismissed as to that defendant, as well.

    **I.**    **Sixth Amendment**

Plaintiff references a Sixth Amendment violation. The Sixth Amendment to the Constitution of the United States provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Plaintiff has not alleged any facts or presented any theory to support a Sixth Amendment violation.   Accordingly, any Sixth Amendment claim is dismissed as not plausible.

### J.     Official Capacity Claims

Plaintiff's individual and official capacity claims under Section 1983 have been dismissed against Attorney Walkley and Judges Iannotti and Brown. To the extent Plaintiff asserts any claims based on constitutional violations for monetary damages against any state employee defendants in their official capacities, such claims are dismissed as barred by the Eleventh Amendment.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  However, "[a] plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."  *In re  Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  *See also Ex parte Young*, 209 U.S. 123 (1908).

Here, Plaintiff has not stated any plausible violation of his federal or constitutional rights so as to support a claim for injunctive or declaratory relief. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) (noting that requests for injunctive relief are remedies and as such are dismissed with the underlying claim).

### K.     State Law Claims

To the extent Plaintiff asserts any claims under state law, the court declines to exercise supplemental jurisdiction over any state law claims.  *See* 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction

over a state law claim if the court has dismissed all federal claims).  Thus, any state law claims are dismissed without prejudice.

## IV.  Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Complaint, ECF No. [12], is **DISMISSED**.

2. Plaintiff's Motion for a Preliminary Injunction, ECF No. [13], is **DENIED as moot.**

3. The Clerk of Court is asked, respectfully, to close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 21st day of July, 2023.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE